IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-30471
Summary Calendar

GLENN SINGLETON

Plaintiff - Appellant

v.

ST CHARLES PARISH SHERIFF'S DEPARTMENT; WAL-MART
LOUISIANA LLP; CURTIS HOWARD; CPL MIGUEZ; CHRISTOPHER
OLIVIER, Deputy; DEPUTY ROTH

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:06-CV-4743

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Appellant Glenn Singleton appeals the district court's orders granting the defendants' motions for summary judgment on his civil rights claims. For the reasons stated below, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2005, shortly after Hurricane Katrina, Singleton attempted to visit the Wal-Mart store located in Boutte, Louisiana. For security reasons, the store limited the number of customers allowed inside at a given time, resulting in lengthy lines waiting to enter. Singleton dropped off his wife and granddaughter at the store's entrance while he searched for a parking space. By the time he approached the entrance, his wife and granddaughter were already inside. Singleton was prevented from entering by Curtis Howard, a security guard employed by Wal-Mart who told Singleton that he would have to wait in the line with everyone else. Howard continued to bar Singleton's entry into the store after Singleton attempted to explain that he was there to buy prescription medications and that his family was waiting for him just inside the door. There was a store policy at the time allowing persons buying only prescriptions to enter the store without waiting in line. Several minutes later, Singleton approached Howard while he was conversing with Richard Miguez, a Sheriff's deputy. Singleton alleges that Miguez began shouting at him to back away from the store entrance. He further alleges that William Roth, also a Sheriff's deputy, approached him from behind; forcibly pushed his arms behind his back; walked him back to his car; and pushed him chest first onto the hood of his car, which aggravated a prior shoulder surgery. Singleton was not arrested at this time, but he was instructed not to return to that Wal-Mart location.

On September 20, 2005, Singleton returned to the same Wal-Mart location to speak with the store's manager regarding the prior incident. As Singleton left the store that day, he was arrested by Christopher Olivier, also a Sheriff's deputy, for remaining after being forbidden. Singleton also alleges that

employees of Wal-Mart and the officers used racial slurs to refer to him on both September 12 and 20, 2005.

On August 25, 2006, Singleton filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1983, and 1985, and several state law causes of action. The district court granted summary judgment to Howard and Wal-Mart on all three federal claims. The district court dismissed the § 1981 claim because Singleton failed to show interference with a contract interest, it dismissed the § 1983 claim because Singleton could not show state action, and it dismissed the § 1985 claim because Singleton presented no evidence of a conspiracy to deprive him of a protected federal right. Thereafter, the district court granted summary judgment in favor of the officers, finding that they did not violate any of Singleton's constitutional rights on September 12, 2005, and that there was probable cause for the arrest on September 20, 2005.[1]

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same standards as the district court. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). "Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." Id.; see also FED. R. CIV. P. 56(c). We view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. Kirschbaum, 536 F.3d at 248.

### A. Singleton's claims against Wal-Mart and Howard

#### i. Singleton's § 1981 claim

---

[1] In this same order, the district court dismissed Singleton's remaining state law claims for lack of subject matter jurisdiction after all federal claims had been dismissed. Singleton has not challenged this portion of the order on appeal.

In order to sustain a § 1981 claim, a plaintiff must show: "(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, in this instance, the making and enforcing of a contract."[2] Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 751 (5th Cir. 2001). The contract interest must be actual and not merely speculative. Id. The district court concluded that Singleton had not been denied access to the store; he had merely been instructed to wait in line with the other customers, which he refused to do. Therefore, Wal-Mart did not prohibit him from entering into a contract with the store—it only delayed his ability to do so.

We agree. In Morris, we held that banning a person from entering a store is insufficient to constitute the loss of an actual contract interest for purposes of § 1981. Id. at 752. However, Singleton argues that his loss of contract interest was not the prospective ban from the store, but his immediate inability to purchase prescriptions and other supplies on September 12, 2005. Initially, Singleton was given the option to stand in the line with the other people wanting to enter the store. Thus, he was not deprived of the right to make purchases on that day because he was simply asked to wait in line with the other patrons. See id. at 752 (noting that the plaintiff must be actually prevented, not merely deterred, from making a purchase). It was his refusal to wait in line and his continued demand for immediate entry that led to his removal from the premises and permanent ban from the store. And since he had not even entered the store, his purported contract interest is much more speculative than the plaintiff in Christian v. Wal-Mart Stores, Inc., who "had selected merchandise to purchase,

---

[2] Singleton satisfies the first element because he is African American. We assume without deciding that his allegations that racial slurs were used against him are sufficient to satisfy the second element. This leaves only the third element—whether he was prohibited from entering into a contract with Wal-Mart—to be considered, which is the only element that the district court discussed.

had the means to complete the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store." 252 F.3d 862, 874 (6th Cir. 2001). Moreover, Singleton admits that when he returned to the store on September 20, 2005, his intention was not to purchase any items, but only to seek redress from the store manager regarding the events of September 12, 2005. Thus, he cannot argue that he was prevented from entering into a contract on September 20, 2005, due to being banned from the store. We conclude that the district court correctly held that Singleton has not proven a lost contract interest for purposes of §1981.

## ii. Singleton's § 1983 claim

"[F]or a plaintiff to state a viable claim under § 1983 against any private defendant . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." Morris, 277 F.3d at 747. A private actor, here Wal-Mart and Howard, is subject to constitutional liability when "such a close nexus between the State and the challenged action exists that seemingly private behavior may be fairly treated as that of the State itself." Id. at 747–48. This inquiry is "highly circumstantial and far from precise." Id. at 748 (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295–96 (2001)). The district court found that none of the state actors involved here had a contract with Wal-Mart and that Miguez and Roth made an independent investigation on September 12, 2005; therefore, Singleton had not established the state action requirement.

In the retail context, "a merchant is not a state actor unless the conduct on the part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer." Id. at 749. This test is designed to determine if "the police pursuant to a preconceived plan, would arrest any person merely because he was designated for arrest by the

store." Id. (internal quotation marks omitted). An officer is allowed to rely on the report of suspicion by a store employee if he also conducts an independent investigation. Id.

Singleton presented no evidence that there was a "preconceived plan" between Wal-Mart and the Sheriff's department or its officers to arrest any person designated by the store. Singleton alleges that he approached Miguez in the parking lot and that it was Miguez, not Howard or any Wal-Mart employee, that instructed Roth to escort Singleton to his car. This interaction occurred independent of any direction from Wal-Mart and was based upon the officers' first-hand observations. Singleton also alleges that Olivier did not conduct an independent investigation before arresting him on September 20, 2005. Olivier, who had already been notified by Wal-Mart that Singleton had been banned from the store, requested Singleton to leave the premises. Olivier observed Singleton's refusal to leave first-hand and decided to arrest him based on this independent observation. Thus, the district court was correct in concluding that Singleton has not shown sufficient facts to satisfy the state action requirement of § 1983 in connection with either incident.

### iii. Singleton's § 1985 claim

Singleton's brief on appeal makes only one vague reference to a § 1985 claim, stating that "it is clear that Wal-Mart's employee, Howard, and the defendant deputies conspired together to violate appellant's rights, falsely arrest him, abuse and injure him based on race." We find that he has waived this issue by failing to brief it on appeal. See The Proctor & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 n.1 (5th Cir. 2004) (citing FED. R. APP. P. 29(a)(9)(A)).[3]

---

[3] We note that, even if he had not failed to brief this issue, Singleton could not prove a conspiracy claim under § 1985 because it requires a predicate showing of a deprivation of equal protection. See Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989). Since his §§ 1981 and 1983 claims failed, there is no underlying action to which a conspiracy could have been directed.

## B. Claims against Miguez, Roth, and Olivier

After the district court granted the motion for summary judgment of Wal-Mart and Howard, Miguez, Roth, and Olivier filed a separate motion for summary judgment based on the defense of qualified immunity.[4] The district court granted the motion, concluding that Singleton had not established that Miguez or Roth violated any of his constitutional rights during the incident on September 12, 2005, and that Olivier had probable cause to arrest Singleton on September 20, 2005, after he refused to leave the premises.

We agree that Miguez and Roth's actions on September 12, 2005, were protected by qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The first step of a qualified immunity analysis is to determine whether, viewing the alleged facts in the light most favorable to the plaintiff, the officers' conduct violated a constitutional right. Aucoin v. Haney, 306 F.3d 268, 272 (5th Cir. 2002). "If no constitutional right would have been violated were the allegations established, the inquiry ends." Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 418 (5th Cir. 2008). Here, we need only reach the first step of the qualified immunity inquiry because, as the foregoing analysis makes clear, the district court correctly concluded that Singleton has not shown a violation of his constitutional rights.[5]

---

[4] The other named defendant, the St. Charles Parish Sheriff's Department, was dismissed with Singleton's consent on January 9, 2007.

[5] The district court made no explicit finding regarding excessive force. However, Singleton alleges only that his arm was placed behind his back and he was pushed towards his car. The fact that he had a pre-existing shoulder injury does not change whether the force used was reasonable.

Olivier is entitled to qualified immunity for Singleton's arrest on September 20, 2005, "if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [Singleton] had committed or was committing an offense." Haggerty v. Tex. S. Univ., 391 F.3d 653, 656 (5th Cir. 2001). An official may mistakenly conclude that probable cause was present as long as that belief was reasonable. Id. "An officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb." Morris, 277 F.3d at 753.

Singleton was arrested for remaining after being forbidden. See LA. REV. STAT. § 14:63.3(A) ("No person shall without authority . . . remain in or upon any structure . . . which belongs to another . . . after having been forbidden to do so, either orally or in writing . . . by any owner . . . of the property or by any other authorized person."). On September 20, 2005, Howard informed Olivier that Singleton had previously been banned from the store premises on September 12, 2005, and that Singleton had returned. Additionally, Olivier asked Singleton to leave the store and observed his failure to do so. The district court was correct in concluding that this information gave Olivier probable cause to believe that Singleton was remaining after being forbidden. See State v. Ceaser, 859 So. 2d 639, 644–45 (La. 2003) (finding probable cause for a violation of § 14:63.3 when a mother told officers that she wanted her son out of her house and the son refused to comply). Thus, Olivier is entitled to qualified immunity for his actions on September 20, 2005.

## III. CONCLUSION

For the reason stated above, we AFFIRM the district court's orders granting the defendants' motions for summary judgment.